IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| ALBERT SANTENIEYO KELLY, | ) Civil Action No.: 4:07-03721-TLW-TER |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs | ) |
| | ) REPORT AND RECOMMENDATION |
| OFFICER RAGLAND; | ) |
| OFFICER WESSINGER; AND | ) |
| DOCTOR LEWIS, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

The *pro se* plaintiff filed this action under 42 U.S.C. § 1983[1] on November 14, 2007. Plaintiff alleges that his constitutional rights were violated due to medical indifference while an inmate at Perry Correctional Institution ("PCI"). Defendants filed a Motion for Summary Judgment on April 24, 2008. The undersigned issued an order filed April 25, 2008, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising plaintiff of the Motion for Summary Judgment procedure and the possible consequences if he failed to respond adequately. Plaintiff filed a response on August 28, 2008.

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

# I.  DISCUSSION

## A.  ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

The plaintiff alleges that his constitutional rights were violated due to a deliberate indifference to his medical needs. Plaintiff alleges as follows, quoted verbatim:

> On are about 1-19-2007 while being transported to the Anderson Radiologist Doctor by transportation officer Ragland and Wessinger I plaintiff Albert S. Kelly was not placed in a safety seat belt, also due to being in a level 1 restraint set up with 2 handcuffs, a black security box, leg irons, and a thong chain, I plaintiff Albert S. Kelly was not able to place myself in a safety seat belt. Upon returning to the institution Officer Ragland crashed the transportation ban on the back right handed side where plaintiff Albert Kelly was seated. Plaintiff Albert Kelly made instant complaints of back, neck, also ribb pains. Plaintiff was told by officer Wessinger and officer Ragland to step off the transportation van into the SMU D Dorm living area without an medical attention. Plaintiff Albert S. Kelly asked to see medical but was denied.  When plaintiff Albert S. Kelly finally saw medical weeks later, they discovered blood in plaintiff's urine. No further medical attention was given. Over the past few months I plaintiff Albert S. Kelly have suffered pains in my back/spinal area, neck area, and ribb area. No medical attention have been given after several complaint to see whats causing the pains. Doctor Lewis told plaintiff Albert S. Kelly that "I guess you are stuck between a rock and a hard place." Plaintiff tryed to do grievance but was told it was too late. Doctor Lewis also denied plaintiff medial attention needed to discover what causing pains. Since 1-19-2007 on the date fo the van wreck plaintiff have received no other medica attention.

(Complaint).

Plaintiff seeks outside testing and $250,000 in damages. Defendants filed a motion for summary judgment along with affidavits, medical records, and exhibits.

## B.  STANDARD FOR SUMMARY JUDGMENT

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972),

and Haines v. Kerner, 404 U.S. 519 (1972).  In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.   If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on the mere assertions contained in the pleadings.  Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

      The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c).  Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof.  Celotex, 477 U.S. at 322-323.

### C. DEFENDANT WESSINGER

It is recommended that defendant Wessinger be dismissed as a defendant in this case as she had no personal involvement with the allegations raised in the complaint based on the evidence presented and based on plaintiff's own admissions. Plaintiff filed a document on May 5, 2008, in which he requested that this case be dismissed without prejudice and that he be protected against any limitations period. Plaintiff further stated that defendant Wessinger was the "wrong defendant, it should be defendant West." (Doc. 334). On August 14, 2008, plaintiff filed a motion to continue with the case that he no longer wished to have the case dismissed. Therefore, an order was issued on August 18, 2008, granting plaintiff's motion to continue the case and the motion to dismiss without prejudice was deemed moot. (Doc. #41).[2]

### D. MEDICAL INDIFFERENCE

As previously discussed, plaintiff asserts that defendants were deliberately indifferent to his medical needs by failing to give him medical care and testing after the PCI van he was riding in had an accident.

Defendants argue that plaintiff suffered no injury as a result of the automobile accidence and that plaintiff has received and continues to receive extensive and adequate medical care from defendant Lewis and the medical staff at PCI.

Defendants submitted the affidavit of Donna Wessinger who attests that she never

---

[2] Even if plaintiff had filed a motion to amend the complaint to substitute defendant Officer West's name for that of defendant Officer Wessinger, it would still be recommended that defendant Officer West be dismissed based on the reasoning in this report and recommendation.

worked transportation with Sergeant Ragland, did not work transportation on January 19, 2007, and was not involved in the medical care of plaintiff or any inmate housed at PCI.

Defendants also submitted the affidavit of Thomas Ragland who attests that he is a Max Sergeant at PCR and has worked for the SCDC since March 2005 and is familiar with plaintiff and the accident he references in his complaint. Ragland attests that in early 2007, he worked primarily as a transportation officer and his duties were to transport inmates from PCI to doctor's appointments, court appearances, and other matters. During transportation, he attests he is responsible for the custody and control of the inmates but has never worked transportation with Donna Wessinger. Ragland avers that he was instructed to take plaintiff to Anderson Radiology for a doctor's appointment on January 19, 2007. Upon arrival, Ragland asserts that he was informed that x-ray machine was malfunctioning and the appointment would have to be rescheduled. Therefore, plaintiff was not seen and was transported back to PCI. (Affidavit). Ragland attests that plaintiff was secured in Level One security restraints which consists of a belly chain, feet and wrist restraints and a black box restraint which prevents the inmate from being able to raise his arms to create space between his wrists. Ragland avers that the purpose of these restraints is to maintain security and to protect the officers, other inmates, and individuals, and the inmate himself from harm. Ragland attests that upon entering the van, plaintiff was instructed to sit in the back of the van and was secured by the shoulder harness safety belt. Ragland asserts that "when we returned from the doctor's appointment, the inmate was antagonizing my partner, a female officer, and trying to masturbate, the inmate's behavior was a distraction to both myself and my partner." Ragland attests that as he was backing the transportation van into the inmate

5

intake area, the sun was shining directly into his mirrors, his vison was affected, and, as a result, he struck a wall on the rear passenger side of the van which resulted in a broken taillight and dented bumper. Ragland avers that the airbag did not release and he would estimate his speed at less than five miles per hour. Ragland attests that plaintiff laughed after he hit the wall with the van, made no complaints about an injury to him and remained secure in his seat at all times. Ragland attests that based on the incident report, plaintiff was seen by Nurse Neal directly after the accident and had no injury. Ragland attests that he was not disciplined for the incident, plaintiff never requested a grievance form from him, and he never treated plaintiff with deliberate indifference to his medical needs. (Ragland affidavit, doc. 28-4). Defendants attached a copy of the accident information form, the incident report, management notes, and pictures of the vehicle.

Defendants also submitted the affidavit of Dr. Benjamin Lewis who attests that he is a physician employed by the SCDC to administer care to inmates at PCI and has been with the SCDC since December 2004. Lewis attests that he has reviewed the allegations in plaintiff's complaint and his medical records. Lewis attests that it is clear from the medical records that plaintiff has received medical attention numerous times while housed at PCI, including before the accident, shortly after the accident, and through the present. Lewis avers that plaintiff complained about back pain at least as early as October 2, 2006, roughly four months prior to the accident and the records reflect plaintiff was seen and treated by medical. Lewis avers that it is his medical opinion that plaintiff's back problems were not the result of the automobile accident, as he complained about and received treatment to his back months prior to the accident. Based on the medical records, Lewis attests that plaintiff was

seen by Nurse Neal on January 19, 2007, and the notes indicate plaintiff evidenced no external injury and denied any pain. Plaintiff was seen again on January 22, 2007. Lewis avers that the medical records reflect plaintiff complained about blood in his urine on March 1, 2007, and it is his opinion that it is not likely related to the accident as plaintiff evidenced no trauma from the accident and the condition did not arise until several weeks later. Lewis attests that as a result of the blood in plaintiff's urine, a urinalysis was ordered to determine the cause. A urinalysis was order on March 6, 2007, and plaintiff was placed on antibiotics for prostatitis on March 8, 2007, as blood in the urine is a common symptom of prostatitis. Plaintiff continued on the antibiotics through April 2007, and a urinalysis order on April 16, 2007, was negative for blood in the urine. (Lewis' Affidavit, p. 3).

As to the allegations by plaintiff that he suffered pain in his back, spine, neck, and rib area, to which he did not receive medical attention, Lewis attests that the medical records refute this claim. Lewis avers that the pain plaintiff described led to an outside consultation at Anderson radiology clinic where plaintiff was ordered to have an x-ray taken of the upper gastrointestinal tract to determine if he had gall stones or kidney stones. Lewis asserts that plaintiff also had an EKG as a result of complaints of chest pain, despite the fact that his age, height, and weight suggest he is not at risk for heart problems. Lewis attests that based on his review of the record, plaintiff has received and continues to receive adequate medical care for each of his complaints. Lewis avers that he has not refused to see plaintiff, has not denied him medical treatment, has never been deliberately indifferent to any serious medical need, and has never found plaintiff to have a serious medical need. (Id.).

The undersigned finds that the plaintiff fails to show that defendants were deliberately

7

indifferent to his medical needs. In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 173, (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of <u>Miltier v. Beorn</u>, 896 F.2d 848 (4th Cir. 1990).  In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." <u>Id.</u> at 851.  Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. <u>Estelle</u>, supra; <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994); <u>Sosebee v. Murphy</u>, 797 F.2d 179 (4th Cir. 1986).

Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. <u>Estelle v. Gamble</u>, <u>supra</u>.  Negligence, in general, is not actionable under 42 U.S.C. § 1983.  See <u>Daniels v. Williams</u>, 474 U.S. 327, 328-36 & n. 3 (1986); <u>Davidson v. Cannon</u>, 474 U.S. 344, 345-48 (1986); <u>Ruefly v. Landon</u>, 825 F.2d 792, 793-94 (4th Cir.1987); and <u>Pink v. Lester</u>, 52 F.3d 73, 78 (4th Cir. 1995) (applying <u>Daniels vs. Williams</u> and <u>Ruefly v. Landon</u>: "The district court properly held that <u>Daniels</u> bars an action under § 1983 for negligent conduct.").  Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law.  <u>DeShaney v. Winnebago County Department of Social Services</u>, 489 U.S. 189, 200-03 (1989).  Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. <u>Estelle v. Gamble</u>, supra, at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") See also <u>Brooks v. Celeste</u>, F. 3d 125 (6th Cir. 1994) (Although several courts prior to the Supreme Court's decision in <u>Farmer v. Brennan</u>, supra, held that "repeated acts

of negligence could by themselves constitute deliberate indifference, Farmer teaches otherwise."); Sellers v. Henman, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); White v. Napoleon, 897 F.2d 103, 108-109 (3rd Cir. 1990); and Smart v. Villar, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal).

The plaintiff has failed to show that he was denied medical treatment. Plaintiff was seen in medical after the accident by Nurse Neal and was seen in medical again two days later. Further, the medical records reveal plaintiff complained of blood in his urine almost two months after the accident. Also, plaintiff's complaints of back pain proceeded the accident by several months. Plaintiff has received x-rays, urinalysis tests, outside evaluations for kidney stones and gall stones, and antibiotics for prostatitis which was considered to be causing the blood in the urine. Subsequent urinalysis was negative for blood. As held in Estelle, 429 U.S. at 107, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Even if plaintiff's allegations are true, he has shown nothing more than a disagreement with the medical treatment provided, not that he was completely denied medical treatment. Additionally, plaintiff has failed to show that he had a serious medical need of which defendant knew about and consciously ignored. Plaintiff has not shown that any conduct by this defendant "shocks the conscious" as required by Miltier v. Beorn, supra. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice"

Jackson v. Fair, supra. The type and amount of medical care is left to the discretion of prison officials as long as medical care is provided. Brown v. Thompson, supra. Any disagreement between an inmate and medical personnel fails to state a claim unless exceptional circumstances are alleged . . . Although there is nothing to indicate that there were mistakes of medical judgment, even if shown, mistakes of medical judgement are not subject to judicial review in a § 1983 action. Russell v. Sheffer, supra. Thus, although plaintiff did not agree with the type of treatment or the timing of treatment he received, the fact is plaintiff was provided treatment. As previously stated, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. Negligent or incorrect medical treatment is not actionable under 42 U.S.C. § 1983.  Negligence, in general, is not actionable under 42 U.S.C. § 1983. If this claim could be construed as asserting medical malpractice, it must also fail. Medical malpractice is not actionable under 42 U.S.C. § 1983. *See* Estelle v. Gamble, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). In addition, plaintiff has failed to provide any expert testimony to show that any actions of defendant did not conform to the applicable standard of care, much less, indifference to his serious medical needs.

Based on the evidence presented, there has been no deliberate indifference shown to the overall medical needs of the plaintiff. For the above stated reasons, summary judgment should be granted in favor of defendants on this issue.

Additionally, any claims of medical indifference as to defendant Ragland should be dismissed as he is not medical personnel and plaintiff has not shown that he interfered with his medical care.   The Fourth Circuit has held that to bring a claim alleging the denial of

11

medical treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier v. Beorn, 896 F.2d 848 (4th Cir.1990). Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. Id. Under these principles, the plaintiff has not alleged sufficient facts stating any claim actionable under § 1983 regarding his medical treatment against the defendants who are non-medical personnel. Plaintiff has failed to show that defendant Ragland was personally involved with any alleged denial or delay of treatment or that he deliberately interfered with plaintiff's medical treatment. Therefore, any claims against the defendants for medical indifference fails.[3]

### E. QUALIFIED IMMUNITY

Defendants argue that they are entitled to qualified immunity.

When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit. Immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it. Once asserted, however, the court should carefully consider whether the person is entitled to either absolute immunity (judicial and quasi-judicial, legislative) or qualified immunity. Once raised, immunity is a threshold issue, which should be addressed early in

---

[3] Viewing the claim in the light most favorable to the plaintiff, there may be an issue of fact as to whether or not defendant Ragland secured plaintiff in his seat by a safety belt as asserted in defendant Ragland's affidavit. However, summary judgment is still recommended in that plaintiff cannot state a constitutional claim as a result of negligent acts of state actors. Negligence, in general, is not actionable under 42 U.S.C. § 1983.

the action because if it can be shown to be a valid defense, the defendant is entitled to dismissal or summary judgment. For that reason, the issue of immunity should be addressed before discovery is allowed.

> The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing.

Akers v. Caperton, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether defendant is protected by this immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to

13

qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824 (1995).  As discussed above, the plaintiff fails to show that the defendants violated any of his clearly established constitutional or statutory rights. Therefore, defendants are entitled to qualified immunity in their individual capacity.  Thus, the undersigned recommends that the defendants' motion for summary judgment be granted on this issue.

### F.  PENDENT JURISDICTION

Assuming plaintiff's § 1983 claim is dismissed by this Court and plaintiffs' complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

### III.  CONCLUSION

The plaintiff has failed to show that defendants violated any of his constitutional or statutory rights under 42 U.S.C. § 1983.  It is therefore, for the reasons stated herein,

RECOMMENDED that the motion filed by defendants (document # 28) for summary judgment be GRANTED IN ITS ENTIRETY.

IT IS FURTHER RECOMMENDED that any other outstanding motions be deemed MOOT.

Respectfully Submitted,


s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge


Florence, South Carolina
November 10, 2008

**The parties' attention is directed to the important notice on the next page.**

15